# CASES

IN THE

# SUPREME COURT OF ALABAMA.

## NOVEMBER TERM, 1905-6.

## *Ex parte* Black.

*Application for Writ of Error to County Court of Geneva County.*

[DECIDED JUNE 30, 1905,* 40 So. REP. 133.]

1. *Statutes; Local Acts; Constitutionality; Notice of Intention.—* Under Section 106, Constitution of 1901, a notice of an intention to introduce a local act, which states the substance of the bill to be introduced, so that those to be affected by it may know what it is, is sufficient.

    (McCLELLAN, C. J. and DENSON, J. dissent as to notice in this case.)

2. *Same; Notice; Publication; Proof.—*A proof of the publication of notice of intention to apply to the Legislature for the passage of a local act, which shows that same has been published and has appeared regularly in four weekly issues of * * * Newspaper, is sufficient under § 106 of the Constitution of 1901, as showing a publication once a week for four successive weeks.

    *Rehearing denied January 30, 1906.

In Supreme Court.

The appellant, James Black, was convicted in the county court of Geneva County, a court of record, of assault and battery and fined. The prosecution was begun by affidavit made before Purvis clerk of the circuit court, and warrant issued by the clerk for his arrest. After conviction, he applied to this court for a writ of error, setting up the facts above stated, and averring that there is error of law appearing upon the transcript of the record

*[Ex parte* Black.]

in that the act creating the court was unconstitutional
and void, and the judgment of conviction consequently
void, and prayed for an order directing the Clerk to send
up to the Supreme Court a certified copy of the proceed-
ings; that upon a review of said proceedings, this court
render a judgment annulling the proceedings in the low-
er court and discharging petitioner.

W. O. MULKEY, Atty. for appellant, insisted; that the
act creating the Geneva County Court was violative of
§ 106 of the Constitution of 1901, in that notice as re-
quired by said section was not given of the intention to
introduce the act creating said court, the same being a
local act.—Acts 1903, p. 537; House Journal, p. 442 and
Senate Journal pp. 299-300. The provisions of the Con-
stitution are almost invariably mandatory.—Black's
Constitutional Law, p. 70; *Winter v. City of Montgom-
ery,* 65 Ala. 403; *Harrison v. State,* 102 Ala. 170. The
notice given contains nothing but the title of the act,
and there is a well defined difference between substance
and subject.—*Wallace v. Board of Revenue,* 140 Ala.
502.

MASSEY WILSON, Atty. Gen., with whom were ESPY
& FARMER, and STEINER, CRUM & WEIL, insisted; that
the sole question presented by the record was the validity
of the act creating the court of Geneva County. The
notice required by the Constitution is such, and only
such, a notice as would give to the people of a commu-
nity to be affected fair and reasonable notice of the gen-
eral object, purposes and effect of the proposed law.—
*Law v. State,* 142 Ala. 62; *Alford v. Hicks,* 142 Ala. 355;
*Hooten v. Melton,* 37 So. Rep. 937; *Lancaster v. Gafford,*
37 So. 108; *State ex rel. v. Speake,* in MSS.; *Breame v.
State,* in MSS.; *Tillman v. Porter,* in MSS.
    Proof of notice was sufficient and the affiadit showed
that the same appeared regularly for four successive
weeks.—*The State, ex rel. Covington v. Thompson,* 142
Ala. 98.

DENSON, J.—The notice of an intention to introduce
into the Legislature a bill to create and establish the in-

ferior court for Geneva county, approved February 27,
1903, reads as follows: "To whom it may concern:
You will take notice that at the present session of the
Legislature of Alabama, a bill to create and establish
an inferior court of record for Geneva county, prescrib-
ing the powers and jurisdiction of said court, and to
provide for the election of officers thereof, will be intro-
duced, and an effort made to have the same enacted into
law." The notice purports to have been signed by five
persons. The proof of notice was as follows:

"The State of Alabama, Geneva County. Before me,
W. R. Chapman, a notary public in and for said county,
personally appeared Ed. M. Johnson, who, being duly
and legally sworn, deposes and says that he is editor and
proprietor of the Geneva Reaper, a newspaper published
in Geneva county, Alabama, and which is a weekly news-
paper, that the notice, a copy of which is hereto attached,
was inserted in said Geneva Reaper, and has been pub-
lished and has appeared regularly in four weekly issues
of said Geneva Reaper.

                          ED. M. JOHNSON.

"Sworn to and subscribed before me on this the 7th
day of February, 1903.

                  "W. R. CHAPMAN, Notary Public.

The constitutionality of the act establishing said court
is questioned on two grounds: That the notice given
of the intention to apply for the passage of the law was
insufficient, in that it did no more than state the subject
of the proposed law and did not state the substance;
and that the proof of notice was insufficient. The court
to be established is referred to in said notice as an "in-
ferior court of record for Geneva county," the bill for
which should prescribe the powers and jurisdiction of
said court, and to provide for the election of the officers
thereof. These are the only words in the notice that
refer to the subject or the substance of the act. That
the act is a local law is not disputed. Section 110 of the
Constitution. The act covers little less than twelve
pages of the printed acts of the Legislature, contains
21 sections, and is found at page 40 of the local acts of
1903. One reading the notice that was published would

not be apprised of any thing more than that the court would be created, that its powers and jurisdiction would be prescribed, and that provision would be made for officers of the court. Section 4 of the act prescribes the rules of practice and procedure in said court. Section 5 prescribes how prosecution shall be commenced in said court. The sixth section provides for jury terms of the court and prescribes the qualifications of jurors. Besides, this section prescribes the rules of procedure that shall govern in jury trials. The seventh section prescribes the duties of the jury commission with reference to drawing jurors for the jury terms of the court. Section 8 provides the manner of obtaining a jury trial. Section 9 provides for appeals to the Supreme Court in civil and criminal cases and from judgments and decrees of said court granting writs of mandamus, habeas corpus and all other remedial writs. It also prescribes a rule for the government of the Supreme Court in reviewing judgments of said court on appeal. Section 11 and 11 1-2 provide that the clerk of the circuit shall be ex officio clerk of said court, and prescribes the fees he shall receive. Section 12 provides for the execution of warrants and process of every kind issuing from said court by the sheriff or his deputies, or by any constable of the county when deputized in writing, and fixes the fees for such service. It also provides that deputized constables shall be liable on their official bonds to any party aggrieved on account of their improper execution of process. Section 13 provides for payment of costs and fees incurred at the instance of the state out of the fine and forfeiture fund of the county. Section 16 confers on the judge of said court, concurrently with the probate judge of said county, jurisdiction in proceedings for habeas corpus. Section 17, among other things, provides that the judge of the court shall exercise all the powers and jurisdiction which is now and may hereafter be lawfuly exercised by the judge of the circuit court, including the authority to issue writs of injunction returnable to the chancery court of said county, mandamus, certiorori, prohibition, *ne exeat*, and all other remedial writs. Section 18 provides for a solicitor for said court, and provides for his compensation. Section 19 provides that the

salary of the judge shall be $1,000, to be paid out of the county treasury on warrant drawn by the clerk.

In constuing section 106 of the Constitution, which provides that the notice of intention to apply for the passage of a local law by the Legislature shall be published, which notice shall state the substance of the proposed law, and be published at least once a week for four consecutive weks in some newspaper, etc., care should be observed that the word "substance" be not used or interpreted as a synonym of the word "subject." The two words are essentially different in meaning and convey entirely different ideas. Section 45 of the Constitution provides that each law shall contain but one subject, which shall be clearly expressed in its title, etc. This section was in the Constitution of 1875, has been many times construed by this court, and in construing that section the difference in the meaning of the two words "subject" and "substance" has been pointed out.—*Falconer v. Robinson*, 46 Ala. 347; *Ex parte Thomas*, 113 Ala. 1, 21 South. 369; *Ex parte Pollard*, 40 Ala. 98; *Wallace v. Board of Revenue*, 140 Ala. 502, 37 South. 321.

From an examination of the authorities cited it will be found that under section 45 of the Constitution, while the scope, the object of the bill, need not be stated in the title of a law, the subject—i. e., the thing legislated upon—shall be disclosed, and the act can embrace only that one. "What the act proposes to do with the subject need not be stated in its title nor the machinery to be put in operation therein disclosed. It is enough if the 'subject' of legislation be stated. The author of an essay, or lecture, in choosing and announcing his subject, does not ordinarily declare, in its title, his proposed treatment thereof, but he simply states upon 'what' he is to write or speak; and he who would know more must read or hear what is written or spoken upon that topic. Precisely this the framers of the Constitution had in mind when they said the subject should be expressed in the title and that it should be single."—*Hurlburt v. Banks*, 52 How. Prac. 202. One short extract from the *Wallace case*, 140 Ala. 502, 37 South. 323, will suffice to show the meaning given by this court to the word

"substance." "The word 'substance,' as employed in the section, cannot be said to be synonymous with 'subject' or mere purpose. It means the essential or material part, essence, abstract, compendium meaning." It was further said in the *Wallace Case* that "the title of a bill may give notice of its substance, but most often it does not." The court in the case of *Law v. State*, 38 South. 798, speaking through Justice DOWDELL, after quoting the above extract, said: "That is to say, that the substance of a bill may be contained in its title, which we think is true in this case before us." The case of *Law*, *supra*, related to the creation of the county of Houston. The act did no more than to create a new county out of portions of the county of Henry, Dale, and Geneva, and defined and fixed the boundaries. By comparing the notice published of the intention to apply for the passage of the law creating Houston county, it will be readily seen that all that there was of substance of the law was embraced in the published notice and also in the title of the act. We cannot assent to the insistence of counsel that the Houston county case is conclusive authority in favor of the constitutionality of the law under consideration.

Certainly several of the matters we have enumerated in the several sections of the act are important parts of the substance of the act. It is not intimated in the notice that the rules of practice and procedure will be prescribed by the act, or the fees will be prescribed for the officers, or that power, the same as the circuit judges possess, will be conferred on the judge to issue the remedial and extraordinary writs mentioned in section 17 of the act, or that the salary of the judge shall be fixed at $1,000, and be payable out of the county treasury, nor that costs and fees incurred at the instance of the state shall be charged on the fine and forfeiture fund. It seems to be conceded that these are all matters of substance, but it is insisted the notice required by the Constitution is such, and only such a notice, as would give to the people of the community to be affected a fair and reasonable notice of the general objects, purposes, and effects of the proposed law. This contention cannot be reconciled with the construction placed upon section 106

of the Constitution in the *Wallace case, supra.* In that case, in Justice HARALSON'S opinion, is clearly pointed out the evils and exigencies which gave rise to the adoption of section 106 of the Constitution. It was adopted in lieu of section 24 of article 4 of the Constitution of 1875, and was substituted for that section. Section 24 provides for notice of an intention to apply for the passage of a local law, but did not provide what the notice should contain. Under the construction given to that section by this court it became a dead letter, and was more honored in the breach than the observance of it. "This," says Justice HARALSON, "It was believed was a great and growing evil which needed correction, and it was for corrective purposes that section 106 of the Constitution was ordained. Any notice, therefore, which falls short of advising the public of the substance of such legislation, would be deceptive or misleading." The quotation made by Judge HARALSON from the debate in the constitutional convention on section 106 clearly shows that the meaning of the word "substance" was clearly understood by the framers of the Constitution before the section was adopted, and that it was intended that it should not be confused with *purpose* or *subject.* A notice of intention to apply for the passage of a local law may contain the subject and may clearly express it, but it seems that nothing less than a statement in the notice of the substance of the proposed law would be a compliance with section 106 as it has been interpreted in the *Wallace Case.*

The Chief Justice concurs with the writer in the foregoing views, and in the opinion that very important parts of the substance of the law are not intimated in the notice, and, for this reason; that the law was not enacted in accordance with section 106 of the Constitution. But Justices TYSON, DOWDELL, SIMPSON, and ANDERSON entertain different views from those expressed by the writer, and hold that the notice given of the intention to apply to the Legislature for the passage of the law was in accordance with section 106 of the Constitution. With respect to the proof of the notice, we take it that the proof should show, with reasonable certainty, that

the notice had been published in a certain newspaper published in the county where the thing to be affected is located, and for the time required by law, but reasonable certainty only is required. We think the words as they appear in the affidavit or proof of notice, "has appeared regularly in four regular weekly issues,' as they are used in their ordinary acceptation, mean that the notice had continued to appear, or continuously appeared, consecutively, or successively, as these words are interchangeably used, for four weeks. All concur in holding that the proof of the notice given was sufficient.

It follows, in accordance with the conclusion reached by the majority, that the proceedings against the defendant and judgment of conviction had thereon are valid, and a judgment will be here rendered quashing the writ of error and affirming the judgment of conviction.

TYSON, DOWDELL, SIMPSON and ANDERSON, JJ., concur.
McCLELLAN, C. J., and DENSON, J., dissent.